Our last case for argument, Bell v. McAdory Mr. DePompeo May it please the Court, Christopher DePompeo of Jones Day, on behalf of Mr. Bell. Mr. Bell is a civil detainee in a mental health treatment and detention facility. In 2010, after refusing to participate in the facility's intake procedures, Mr. Bell was forcibly removed from his room and transferred to an observation cell, where he was stripped of all of his clothing and required to remain there for eight days. The law is clear that the 14th Amendment prohibits any kind of punishment for a civil detainee like Mr. Bell. In fact, the question in such a case is whether the treatment that the detainee was subjected to, quote, amounts to punishment. Does it matter whether it's punishment? What if it's just torture, maliciously, you know? I mean, what if this Williams and this other fellow just hate child molesters? So, they decide they're going to torture and shame Bell by taking his clothes away. That's actionable, isn't it? It is, and it would be actionable because it would be punishment for Bell's past crimes. I don't think you have to bring the word punishment in. Certainly in that case. It's not important, but... Your Honor, the reason we bring punishment into the case is simply because the test under Bell v. Woolfish under the 14th Amendment is whether or not the treatment amounts to punishment. What if they just, what if these two guards said to each other, look, we hate this person, let's just torture, right? Not punishing, he's adequately punished with his prison sentence, but we just hate him, so we want to torment him. That would certainly also be actionable under the Due Process Clause, potentially under a theory of... The temperature was in this room where he was kept for eight days without clothes? We don't, Your Honor. We know that, according to the government, in the summary judgment motion, the temperature was the same as in the place he was originally. Didn't the nurse or someone say it was terribly cold? She did, and in fact, when Mr. Bell complained to the nurse about the temperature, she said that the reason he was so cold was that he did not have any clothes on, which, again, just shows the obviousness of the circumstance. She didn't say the room was cold, just was cold for someone who had no clothes? I don't recall her saying that the room was especially cold. I do remember her saying that the reason Mr. Bell was cold, and in fact he claimed that his bones hurt, was because he was not wearing any clothes. Now, how can you actually be defending the conduct of these people? I am not defending the conduct of these people. I'm representing Mr. Bell. Sorry. No, I do think it's a good question. As far as the temperature goes, he was remanded back, remanded on June 4th, I think, back to the Rushville. So it would have been spring, early summer. That's right. So the air conditioning was on. He arrived at Rushville on June 4th. He spent 20 days in the special management unit, after which point he was transferred to the observation cell in the infirmary and deprived of his clothing. Immediately after that, Mr. Bell said he would do anything to get his clothing back, but he was still left there for eight days without any clothing, with only a small piece of cardboard to cover himself, and he actually went on a hunger strike at that point under the erroneous belief that after 72 hours a court would become involved. Eventually he did take food, and eventually on July 1st when he agreed to participate in the intake procedures, he was immediately given his clothes back and put into the general population. There doesn't seem to be any excuse for the treatment he received. On the other hand, he was certainly not a model prisoner. Mr. Bell did not comply with the intake procedures. The reason was that Mr. Bell thought that he was not subject to being put back into the detention center. Whatever he thought. He did not agree to comply with the procedures. Now that conduct only manifested itself in five ways. He refused, I believe, two photographs, a medical evaluation, and a psychiatric evaluation. The most serious thing he did was that right before the extraction and the removal to the observation cell, he, through a locked door, told the supervisor of the security unit that when he got out of the cell he would put his foot up the supervisor's behind, using more colorful language than that. And that was it. It was soon after that, on the same day, that Mr. Bell was removed from the cell forcibly and transferred to the observation cell, and his clothing was removed. Well, he's regarded as mentally ill, isn't he? Isn't that the basis of his civil commitment? It is. So he's not expected to act in a rational fashion, right? Certainly, exactly. And, Your Honor, the fact that he is mentally ill and is confined as a civil detainee to a treatment center is significant in this case because it shows how far away from a normal convicted prisoner whose rights would be derived only under the Eighth Amendment he is. In fact, a case like Bell, which involved a pretrial detainee, involves someone who at least crossed over the threshold of probable cause to have committed a crime. In this case, Mr. Bell is being detained solely because he has a mental disability. Counsel, I think what you really need to address, what your main problem is, is the fact that we are here on appeal from the denial of relief under Rule 60B. We are. And the Supreme Court has said you can't use Rule 60B to get what amounts to a belated appeal. So let's assume that the district court erred on the merits and should not have dismissed the claim. Why is this now reviewable on appeal from the denial of Rule 60B relief? The reason is that the district court, in denying Rule 60B relief, did so solely on the basis that it had made no errors in its summary judgment opinion. That conclusion, assuming that the summary judgment decision was legally erroneous, was wrong as a matter of law and an error as a matter of law. Well, what do you think is the effect on that line of argument of the Supreme Court's decisions in Gonzales and Ackerman? Your Honor, I believe, I'm not certain, Your Honor. I believe that the proper case and the best case for this circumstance is this Court's decision in Mendez. No. Believe it or not, if there's some kind of tension between the Seventh Circuit and the Supreme Court, we tend to follow the Supreme Court. Yes, of course. That's our job. Of course. So I'm asking you about two Supreme Court decisions, one of which, the Ackerman decision, which was reaffirmed in Gonzales, says that even if the district court has made a legal error, and even if that error has been established by the Supreme Court itself, Rule 60B does not provide for relief. That's a pretty powerful holding that you're asking us to disregard. Your Honor, I believe the Court's recent decisions and understanding that the Supreme Court would control the Seventh Circuit, but this Court's decisions do open up an opportunity for, in certain circumstances, a Rule 60B motion that is not an attempt to evade a belated or to bring an ablated appeal. So I take it your answer is you just have no means of reconciling your position with either Gonzales or Ackerman. Those look like the dominant Supreme Court cases. Your Honor, I don't, as I stand here now, have a basis for distinguishing those cases. However, in the recent cases that are on point in this Court, do leave open the opportunity that when there has been a Rule 60B motion that is not an attempt to evade an expired appellate time limit, and where that motion has been brought within a reasonable time, that this Court is permitted to evaluate whether it made errors on the decision below. In fact, that's what happened in Mendez. In Mendez, the District Court issued a judgment, later realized that it had not considered a magistrate judge's report. It read the magistrate judge's report, determined that it had made an error in its judgment, and sought to correct that error on Rule 60. The very issue that the government has raised here was presented in that case, which is can a District Court, does a District Court have power to correct its own legal errors on Rule 60B review? And what this Court said was that it does in certain circumstances, as where the motion is brought within a reasonable time and where there is no suggestion that the motion is an attempt to evade an expired appellate time limit. And that's what occurred in this case. Mr. Bell brought his motion 31 days after the entry of judgment. Mr. Bell erroneously believed that it was a timely Rule 59 motion, as we've detailed on page 6 of the reply brief. He had wrongly calculated the days because he was operating pro se and did not fully appreciate how the days were counted. And as this Court said in Mendez, that the rule that normally a Rule 60B motion must be brought before the time for appeal has expired is a sensible rule, so long as it's applied flexibly. And even if typically those kind of appeals will present an opportunity where the appellant could be attempting to evade an expired time limit, in certain circumstances that won't be the case. We think because of Mr. Bell's status as a pro se individual, because of the seriousness of the District Court's errors, and because of his contemporaneous statements believing and explaining his... You do know that Gonzales himself was proceeding pro se in the Supreme Court's case? Certainly that is one fact that's not dispositive. The Supreme Court didn't view it as a factor at all. Now, maybe you think the Supreme Court was making a mistake, but we're supposed to be following them. Your Honor, certainly. All I can tell you, Your Honor, is that in this Court's most recent cases and discussions of this issue, do show that there's an opportunity for Mr. Bell to bring these kind of claims in a Rule 60B motion. It doesn't mean that the District Court was required to grant him relief, but the District Court was required to not deny him relief through an abuse of discretion. Here its statement that its summary judgment decision was wrong as a matter of law was legally erroneous, and therefore by definition an abuse of discretion. Is it your argument that if the District Court had just said, I don't believe that the plaintiff has given a good reason to depart from my earlier ruling, so in the exercise of discretion I deny the motion. If the judge had said that, your view is that that decision is effectively not reviewable? It's reviewable for abuse of discretion review. Had the judge articulated bases beyond simply that his underlying decision was correct, our argument would be much more difficult, because there is a great deal of discretion for the district judge in granting or denying a Rule 60B motion. So when Bell asked for this post-decision reconsideration by the judge, did he mention Rule 60? Mr. Bell believed that his motion was a motion under Rule 59E. Now, he filed it 31 days after the judgment. So it was too late for that? It was, correct. And this Court has held that when a Rule 59, a motion styled as Rule 59E. Right. Is there any provision other than 60B that he could have invoked? At this stage, Your Honor, Rule 60B was his only opportunity. That was all that was left for him? That's correct. Okay. Well, thank you. Let's all reserve the rest of your time. Mr. DiPompio. Mr. Maggio. Good morning, Your Honors. Pardon me. And may it please the Court, my name is Timothy Maggio. I represent the Appellees, Mr. McAdory and Mr. Williams, this morning. With the Court's permission, may I turn first to the jurisdictional question that we've been talking about, the issues in front of the Court? Certainly not a jurisdictional question. Do you know why I say that, Your Honor? Because in banks, for example, and— It has to do with the standards of review on appeal. Notice of appeal was filed within the time for appeal from the Rule 60B decision. So we have appellate jurisdiction. What we need to do is think about the standard of review. That's what Gonzales and Ackerman are about. They don't have anything to do with appellate jurisdiction. I take Your Honor's point. The only reason why I had mentioned that is that, for example, in banks, this Court had referred to it as a jurisdictional issue. But that's a clear mistake. Again, we follow the Supreme Court. It does not describe this problem as jurisdictional. It has to do with the standard of review. Thank you. I take Your Honor's point. What we're dealing with here is a motion, a post-trial motion, that was filed beyond the time limit for filing a notice of appeal. This was pointed out 31 days. And as we've talked about, this Court's jurisprudence says that the denial of that motion cannot be used in order to bring up all the issues that were incorporated into the judgment of merits, the summary judgment motion. The Court's cases say, ask one question. The issue in front of the Court, is that an issue that could have been raised on direct review? If the answer is yes, then review is precluded. Mr. Bell says here that there are three avenues, I guess, is the best way to describe it for getting around there. First, he says this incorporation theory. The technical question, I think, is whether there's a difference between a judge saying, in response to a Rule 60b motion, that I am reiterating the correctness of my original decision, as opposed to it's too late to make changes in my original decision. Ackerman is the second of these. It's obvious from the briefs that neither side is acquainted with Ackerman. But in Ackerman, there were two parties. One of them takes his case all the way to the Supreme Court on direct appeal and wins. And then the other party says, ah, dear District Judge, please give me the benefit of my co-litigant's victory in the Supreme Court. And the judge says, it's too late. And the Supreme Court says, that's right. It's too late to fix. You had to take a direct appeal. We didn't quite have, in Ackerman, the case of what would have happened if the District Judge had said in the 60b motion, I'm right, the Supreme Court is wrong, so there. I think there's a greater chance that the Supreme Court might have reversed that. Well, I think if I understand Your Honor's point correctly, you do have that situation in Banks, if I understand Your Honor's hypothetical. In Banks, similar to this case, you had someone who filed the post-trial motion. It was untimely. The District Judge actually engaged the plaintiff, though, on the 60b. The District Judge wrote an opinion that said, oh, you say I have this issue of fact wrong. No, I didn't get it wrong. Here's why. I have this issue of law wrong. No, I didn't get it wrong. Here's why. And then on appeal from the 60b, the appellant wanted to re-examine all those issues, which were merits-based issues. And this court said quite plainly, no. In fact, it addressed what the District Court said and said the happenstance that the District Court that actually talked about these questions does not change our analysis. It does not give us a right to go back and take a look at issues that could have been raised on direct appeal. Mr. Bell also talks about... Why doesn't it? I apologize. Suppose the District Court had granted the Rule 60b motion  I did indeed make a mistake. And the reason why I think I'm entitled to fix it is that Mr. Bell was proceeding pro se and I didn't get really good briefing. I'm sorry I made the mistake. I'm going to reopen the case. And then there's a trial. Bell wins at the trial. Are you arguing that you could appeal and say we're entitled to have it reversed after Bell has won at trial because the District Court had no authority to reopen the judgment? That's not our argument. It's not critical to our case. Obviously that's not what happened in this case. You were just saying before I asked this question, the District Court had no authority to grant this. That's not what... If I said that, I apologize. Right? Gonzales says there's got to be, the Supreme Court says, an extraordinary reason. And I take that as meaning a really, really good reason. For doing it. Because otherwise, you're just abolishing the time limit for appeal. You should always file a belated motion and then always get rid of it. So suppose the District Court says there is a really, really good reason for doing it. I'm doing it. Your statement that the District Court had no authority would imply that we should reverse. Yes, if I said that the District Court had no authority, I certainly didn't intend to say that. I don't recall when I said that. In the context of banks, I was saying banks, the District Court engaged the plaintiff and said, I'm going to address all of your issues. And this court said... But isn't that, in effect, reopening the case? Well, and this court said no. So the direct answer is no. This court said the fact that the District Court reengaged, went through the factual issues and the legal issues, that is not a cause to bring up all those issues again where the appeal is limited to the denial of Rule 60. And Mendez is a case, I think, that gets to some of the issues that Your Honor is talking about. Mendez talks about the authority of the District Court, when the District Court may use 60B. And Mendez says, well, the reasonable time limit... You know, we said the 60B motions have to be brought within a reasonable time. Well, the reasonable time limit is certainly if the motion is filed within the appeal time, 30 days. And then Mendez also says that if there is a timely notice of appeal, then the District Court, I think, has a broader horizon in order to entertain a Rule 60B motion. And the procedure, as everyone here knows, is that if the District Court indicates a willingness to grant the motion, then the District Court certifies that, makes a statement, and then this court, on a proper showing, then remands. But Mendez importantly says, with respect to the issue we have here today, and if I might, quote, Rule 60B relief is appropriately denied when a party fails to file a timely appeal and the relief sought could have been attained on appeal. So Mendez, I don't think, is inconsistent with any of the other decisions that we've been talking about here. And the last point that we heard this morning is the discussion about... But I don't really understand, because I think you're saying, maybe I'm just borrowing what Judge Easterbrook said, that the judge... If the judge had decided he'd made a very serious error, then even though the 60B motion was untimely, he could have reopened the case and corrected the error. Why do you say that? I said two things. One, that's not our argument. That's not what's before us today. But that Mendez does talk about the time limits and whether or not the motion was filed within a reasonable time. And at least Mendez, as far as it goes, is to say if the 60B was filed in 30 days, the district court judge plainly has the authority to correct his errors. And then if there is a timely notice of appeal filed, the district court still has an additional window of time. And that's where the district court uses this system where it writes out and says, I've looked at the 60B, yes, I made a mistake, and asks this court then to remand so that the district court can correct the error. I think we are having a fundamental problem with nomenclature here. Anything filed within the time for appeal is not a Rule 60B motion at all. It's a Rule 59 motion. That's what Rule of Appellate Procedure 4A.4 provides. The reason this motion was classified under 60B is that it was filed after the time for appeal. But nothing filed within the time for appeal is treated as a Rule 60B motion. That's just the way the rules work. I think the last point, if I understand Mr. Bell's argument correctly, is that his status as a pro se litigant ought to be a basis for this court to relax its rules in this area. And again, I would respectfully suggest that this court has already addressed that issue. Most recently in this court's decision in Eberhardt versus Brown, which I believe was within the last year, we have a case very similar to the one we have here. We have a pro se plaintiff who files a post-judgment motion, does not file a timely notice of appeal. This court, a motions panel, screens the appeal and decides that the only proper appeal is an appeal from the denial of the Rule 60B,  cannot bring an appeal from the merits of his summary judgment. The case then proceeds, and the merits panel says, we are not going to discuss any of the issues that could have been raised on direct appeal. Mr. Eberhardt says, well, I'm pro se. I didn't understand the rules. I don't know anything about them, so these cases shouldn't apply to me. And the court rejected that argument. The court said, if I can find it here, the court said, quote, litigants who proceed without counsel are not excused from the procedural rules, and the court refused then to consider the summary judgment. So we already have an issue where pro se or not. Wait, wait. Could you tell me again which case this is? Because I don't even understand the concept of refuse to consider the summary judgment. Which case is this you're referring to? Your Honor, it's Eberhardt versus Brown. Citation 580, Federal Appendix 490. So it's not only not in your brief, it's not even a precedential opinion. Correct, Your Honor. That's fatal on both grounds, one would think.  Your Honor, the notion that Mr. Bell is entitled to relief because of his pro se status comes up only in Mr. Bell's reply brief before this court. In fact, in Mr. Bell's opening brief before this court, he's just- Isn't there something asymmetric? If I understand you correctly, if the judge, after the 60 days, was to say, oh, I think I made a big mistake on the merits, and so I'd like the case reopened. You say that's permissible. Is that permissible? Yes, Your Honor. But isn't it asymmetric to say, well, if in fact he has made a serious mistake and now he repeats it, now he adheres to his mistakes, there's no remedy? Does that make any practical sense? Two parts to that. There certainly does seem to be some lack of symmetry there. But does it make any practical sense? Of course it does. I think your argument has to be that if all the judge says is I made a mistake, and he doesn't give any reasons beyond that, such as the plaintiff has a mental disability and can't figure out what timelines are, then the Court of Appeals has to reverse. And you would rely on Gonzalez against Crosby and Ackerman for that point. I don't think you want to stand up and concede that the Supreme Court of the United States is wrong in deciding cases that apparently favor him. I certainly don't want to do that, Your Honor. No. Well, that's just what you did. Well, I did so I did it. It would really have helped us had the briefs discussed the Supreme Court's cases rather than focusing on, say, unpublished non-presidential orders of the Courts of Appeals. Thank you, Your Honor, for that. In our paper, what we did is we thought we put forth precedent from this circuit, which was directly on point. And as to the notion again about Mr. Bell's pro se status, Your Honors will recall that in their opening brief, they disregarded the 60B issue entirely. And the first time this notion that relief ought to be granted because of pro se status appears only in their reply brief before this court. And so that's why I raise it today with Your Honor. I mean, what's troublesome about it is the barbarous treatment of this fellow by these guards. I mean, it's really disgraceful, totally unjustified. Your Honor, the In fact, it is sadistic. Your Honor, it may not be a fully satisfying answer, but the first one No, no, that's not. Oh, I'm sorry. You were going to give a not fully satisfying answer. That's fine. I'm happy to hear it. I was going to give it. Refer that to the fully satisfying answer. And as a warning, it's two parts, right? The first part is that the district court did find that it was a reasonable thing to do. Yeah, but he was wrong. And the second part is, Your Honor, if I may, Your Honor, he was working with the record that was put in front of him. And on the record that was put in front of him I thought we were dealing mostly with allegations. I thought it was agreed that we don't even know what the temperature was. We're not dealing with it. We would have called it cold, but we don't actually know what the temperature was. And there's a big difference between being naked in 80 degree temperature and 50 degree temperature. And that's precisely what the district court said, Your Honor. That's precisely what the district court said. Because the district court said, look, if we're dealing with the conditions of confinement case, there are two elements to that. So how do you decide a case like this responsibly, if you're a district judge, without having a clue what the temperature is or was? Because on summary judgment, the movement lays out all of its undisputed facts before it. The opposing party then responds. And that's exactly what happened here. Mr. Bell responded to some allegations that he wanted to. He denied others. He ignored others. And we live in a world where the plaintiff said, I was very cold. The prison presumably knows what the actual temperature was. It's very hard for the prisoner, who presumably was not furnished with a thermometer. Clothes were taken away. He certainly wasn't going to be given a thermometer to quantify this. But the prison might have reasonably accurate records about what the temperature was. And I believe we've heard this morning that the record indicated that the temperature in the infirmary was the same temperature in the balance of the building. Now, had Mr. Bell challenged that on appeal? Had he denied that? Had he said, no, I need additional discovery on that issue? We might be having a different case. But that's not what was here. We don't know the temperature in the building, do we? Pardon me, Your Honor. I'm sorry. Do we know the temperature in the building? I do not know the temperature in the building, no. So knowing that it's the same temperature, I don't know. I'm sorry. I don't know what that does for you. But forgetting about the temperature, I don't see how they can take his clothes away. I mean, really. Well, the only thing in the record. This is bizarre. I apologize, Your Honor. Shall I respond to that? Yeah. The only thing that we know from the record are two things. One, that in Mr. Bell's first room, he had a window and he papered over it. We've all talked about that and seen that, right? And so he was then moved to the infirmary where the windows are larger. And the only thing we have on the record, which I have to say is undisputed in this, is Mr. McAdory's statement that the reason why he took the clothes away were for two reasons. One, the first one being so that Mr. Bell would be unable to again. But that's ridiculous. Because all they have to do is say to him, if you take your shirt off and cover one of these windows, we're going to take the rest of your clothes away. Right? Well, I disagree that it's ridiculous. At the risk of citing another decision. No, it is ridiculous. They just have to tell him that. You mustn't cover the windows or take your clothes away. And that's the end of it. Right there. These people, they hate him. He's a child molester. He's a pain in the rear end in this Rushville facility. May I make one point in response to that? Typical in any place of detention in Illinois, of course. I see that my time has run. May I make one response to that question, if I may, Your Honor? Absolutely. This court recently, again in an unpublished decision, talked about, though, just my luck in an unpublished decision, talked about what happened when I think it was an inmate in this situation. The case is Goodvine v. Moniz, M-O-N-E-S-E. The inmate covers over his window and the guard says, stop that, take that down. And by the time the inmates are able there again to intervene, the individual has terribly, sadly, already cut his arm and now blood is pooling on the ground. So it's not as if when people say, oh, you're covering your window, that's some sort of silly problem or a problem that gets dealt with in a heartbeat. When you have somebody like Mr. Bell, who is aggressive when people try to enter the room, as we saw in this particular case, who's aggressive, you can't just say, take it down, and then when he doesn't, open the door and take it down for him. There need to be procedures, and those take time. And so I would ask the court to at least consider that, as the court considers the rest. I see my time has expired. Okay, thank you very much, Mr. Mangio. Thank you, Your Honor. Mr. DiPompio, do you have anything further? Thank you, Your Honor. Your Honors, the Supreme Court's decisions in Gonzalez and Ackerman are not inconsistent with Mendez. Both of those decisions predated decisions in Mendez and Banks and involved different circumstances. Gonzalez involved a claim under Rule 60b-6, which provides for extraordinary circumstances. In this case, Mr. Bell has not sought to proceed under Rule 60b-6. He sought to proceed under Rule 60b-1 for mistake of law. If you would stop fiddling with the microphone, the recording will be clearer. I'm sorry. I'm sorry, Your Honor. Mendez actually was quite clear that his holding only applied to Rule 60b-1 because under Rule 60b-1, which provides an avenue for remedies of mistake, there can be remedies for mistake of law in such a circumstance. Again, Gonzalez was only about Rule 60b-6. Ackerman, which was decided in 1950, involved a claim where the Rule 60 motion was brought, I believe, four years after the decision. Under Mendez, which requires that such a motion be brought within a reasonable time, it's quite clear that Ackerman's circumstances would not have qualified as a reasonable time. In this case, Mr. Bell's motion was brought 31 days after the judgment. And so Mendez opens the opportunity that if his motion was not seeking to open up an expired appellate time limit, that he should be provided an opportunity to bring those claims on appeal. And we think that the district court should have the opportunity to consider on remand, after serious errors of law are made clear by this court, whether or not the circumstances are right for the court to grant Rule 60b relief from the judgment for Mr. Bell. Okay. Well, thank you very much, Mr. DiPanvio. And you were appointed, were you not? Yes. We thank you for your efforts on behalf of your client. We thank Mr. Maggio for his efforts.